Delivered December 12, 1890.

---

## L. A. YEATMAN ET AL. V. J. N. HANEY.
### No. 3093.

1. **Construction of Will.**—See discussion of a will and conclusion reached as to its meaning that an absolute devise was made to one of the devisees of four sections of land in Texas. The conclusion is reached by considering all parts of the will which can relate to the devise. The intent appears to control a literal interpretation of the language used.

2. **Same.**—The words "If I gain the suits against Wm. A. Harrison depending in the Chancery Court at Columbus, also four sections of my Texas land scrip to be taken by lot," construed, in connection with the other parts of the will, not to prevent the devise of the "four sections of my Texas land scrip" from being absolute, and not depending upon the contingency expressed in the preceding words. These are held to be attached to the preceding devise of lands in Mississippi, some of which appear to have been in litigation.

3. **Residuary Legatee.**—The will not making the grantors of the plaintiffs residuary legatees of the land devised to Mahorner, under whom the defendants claim, even if the devise was contingent the plaintiffs would show no title upon the happening or failure of any contingency affecting the Mahorner devise.

4. **Evidence of a Lapse in a Devise.**—See testimony insufficient to show the death without issue of two parties to whom lands were devised for their life, with power to appoint to the heirs of one or of both.

5. **Partition.**—By will the testator gave four sections of Texas lands to Mahorner, four to the Magee girls, two to Jane Yeatman, and the balance (nine) to Mary Ann Yeat-

man's children equally. The heirs of the latter took possession of nine sections of the Texas lands. In a suit by them against vendees of Mahorner for a section selected by him they could not have partition unless they alleged and proved that the nine sections were not of value section by section with the remaining sections.

APPEAL from Hood. Tried below before Hon. C. K. Bell.
The opinion contains a statement.

*B. M. Estes, A. R. Cushman* and *Grubbs & Hefner*, for appellants.——
1. The bequest to Mathias Mahoner was contingent and dependent upon the testator gaining a suit then pending in the Chancery Court at Columbus, Mississippi. The language of the will relating to said devise is as follows: "If I gain the suit against William A. Harrison depending in the Chancery Court at Columbus, also four sections of my Texas land scrip to be taken by lot." 2 Redf. on Wills, 167, 115, 117, 127; 1 Jarm. on Wills, 621, 628; 2 Jarm. on Wills, 434, 436, 437, 439, 442.

2. Said devise being contingent, it devolved on the defendant to show that it had become absolute by the happening of the said contingency, which he failed to do, and hence plaintiffs are entitled to the land as residuary legatees. 2 Redf. on Wills, 115, 117, 127; Cambridge v. Rous, 8 Vesey, 12, 25; Leake v. Robinson, 2 Mer., 363; Reynolds v. Kortright, 18 Beav., 417, 424.

3. Conceding that the sixth clause of N. H. Hooe's will was absolute and unconditional as to the Texas land scrip, the heirs of Mathias Mahorner are only entitled to four sections of the same; and in the absence of an allotment or legal partition they would be entitled to an undivided interest in the whole number of sections proportioned to their said interest, and plaintiffs would be entitled to the remainder as residuary legatees. They are entitled to one-half of the section sued for, should the court hold that the defendant is entitled to the other half. 2 Jarm. on Wills, 365, 635.

4. Even though the court should hold that plaintiffs are not entitled under the terms of the will and the facts in this case to recover the land bequeathed to the Magees, they are entitled to recover in their own right as residuary legatees of all the lands in Texas not specially bequeathed to others. And if it should appear that the Magees or their assigns or legal representatives have an interest in the land, it would be the duty of the court to have them made parties to the suit and the rights of all parties adjudicated. Said interest, if any, could not avail defendant as an outstanding title without showing that the same attached to the particular section in controversy. 3 Jarm. on Wills, 798; Freem. on Part., sec. 463.

No brief for appellee.

STAYTON, CHIEF JUSTICE.—This action was brought by appellants to recover 640 acres of land patented to N. H. Hooe, and as both parties

claim under his will, their rights depend upon the meaning and effect of some of the clauses of that instrument.

It is conceded that the land in controversy is a part of the lands in this State owned by the testator, and referred to in the parts of his will which will be hereafter noticed.

Appellants claim as children or descendants of children of Mary Ann Yeatman, and appellee claims through Mathias Mahorner.

The testator had two legitimate children, William D. Hooe and a daughter Frances, who married a Mr. Harrison, by whom she left a son.

Mathias Mahorner and Mary A. Yeatman were his natural children, as were Elizabeth and Sewez Magee.

The will of Hooe was olographic, and if correctly copied in the transcript, but little attention was given to the arrangement of sentences or punctuation.

The parts of the will which have direct bearing on the question before us are as follows:

"4th Item. I will that $10,000 may be put at interest in sums not exceeding $5000 on unincumbered good lands, or laid in six per cent Virginia State stock, at the discression of my exors, or good bonds due me retained of the above amount, & the interest accrueing regularly collected, & as far as necessary be applied to the contingent expenses of boarding, clothing & educating of my natural daughter Elizabeth Magee, daughter of Susan Magee, now living on my Neck Quarter estate & when she, Elizabeth Magee comes to lawful age or marry, then all the interest that may have accrued beyond her supplies during her minority must be paid over to her, also the yearly interest that may & will accrue on the $10,000 for & during her life, & the $10,000 she, Elizabeth may will at her death as she may be pleased to her children if any, & my exors are requested then to collect the $10,000 & pay it over according to her will, & if she Elizabeth have no children then living, then & in that case the interest of the $10,000 may go & descend to her sister Sewez Magee, & if they, Elizabeth Magee & Sewez Magee have no children living at their death, then the money, devised to them must be collected by my exors & equally divided among the living children of Mary Ann Yeatman now in Baltimore as they came of age or marry. I also loan to Elizabeth Magee her life two sections of my Texas land scrip to be willed by her to her issue as she may please at her death & to be under the above reservations & restrictions. I give in fee simple to Elizabeth Magee my one-sixth interest (bought of George Hudson) in the negroes held by Mrs. James Wramy her life. It is particularly requested of my exors that Elizabeth & Sewez Magee be educated generously in Baltimore or Philadelphia & kept at good boarding.

"5th Item. I loan to my natural daughter Sewez Magee same mother, $10,000 in money or good bonds due me, also two sections of my Texas land scrip under the same limitations, reservations & restrictions as in the

above and fourth clause in this my will, saving that the mother Susan Magee must be paid $30 yearly from the interest, for her childs support as long as it remains necessarily with her, & then Susan Magee shall receive $20 of the interest arising from this devise during her life after Sewez is removed to be educated as above.

"6th Item.   I give forever to Mathias Mahorner now my agent in Mississippi Noxubee County my six eights of land in section eight; also three eights in section 17 & one-eighth in section 20, Township 14 R 18, also six eights in section 27, also five-eigths in section 28, two eights in section 35, all my rights in section 34 & all my rights in section 33, all my rights in section 32, & all my rights in section 31, all lying & being in Town Ship 14 range 18 Noxubee Cty Miss'pi, also my one-eighth in section 2, one-eighth in section 4, four eights in section 5 & and one-eighth in section 6, Township 13 range 18 same County & State being forty-one eights of land,   If I gain the suits against Wm. A. Harrison depending in the Chancery Court at Columbus, also four sections of my Texas land scrip to be taken by lots, also $1100 Texas government funded debt, taken by K. H. Forbes for Fielding Lewis who paid my money for it.   The interest of this funded debt is reserved for twenty-one years to meet the payment of the taxes on all the lands I purchased in Texas, but if this fund falls short of paying the taxes as I intend, then the said M. Mahorner must pay them from the portion of estate I have given him, but if any of my legatees at any time take possession of their Texas land it will be by allotment, & each person as they receive it must pay the tax on it.   I further give to Mathias Mahorner the one-half of all the ready money he may have in his care & and the one-half of all the debts due me in the State of Mississippi & Alabama including judgments, bonds & accts subject to the payment of all my just debts due in either of the aforesaid States of which I know of but $800 and further I give to him the said Mahorner, one-half the cotton crops growing or on hand, or that may hereafter be made during the stay of my slaves under his care preparatory to their removal to Africa, which must be within three years next succeeding my death, with all the other crops of corn &c, & all my stocks of every kind including mules, horses jackass cattle, hogs, sheep, wagons, ploughs, gearing, tools, iron & mixed property of every kind subject to be kept together for the easy and profitable management of the farm & well feeding & cloathing of my slaves as long as they remain under his care.   I further give to the said Mathias Mahorner for ever the following named slaves.   Henry & wife Nancy now at Tetotum, Ellis & wife Winny, Robin & wife Aggy Cook.

"7th Item.   I give to John Yeatman oldest son of Mary Ann & John W. Yeatman of Baltimore two sections of my Texas lands and $2000 when he comes of age.   The interest of said sum to be paid him yearly to aid him in getting an education.   The balance of my Texas lands I give to

Mary Ann Yeatman's children equally and $500 each as they come of age or marry. The interest of the $500 may be paid them yearly to aid them in getting educated."

The will assumed to emancipate most of the testator's slaves, of whom he seems to have had many, and made provision for their transportation to Africa; and in reference to the sum provided for that purpose he provided "should there be a surplus left of money It may be equally divided between Mathias Mahorner my Exor & John Yeatman above mentioned and should there be a deficiency of money to carry out my design of emancipating my slaves that may be under the care of Mathias Mahorner may be retained on my cotton farms three or four years to make up the deficiency of money lacking."

The will so far as quoted contains all that can be understood to make any residuary bequest or devise.

The testator gave but a small part of his estate to his only legitimate son, and from the evidence the inference is that Mrs. Harrison was dead at the time the will was executed, but in reference to her son it contained the following provisions:

"3rd Item. I give to my grandson Nathaniel Hooe Harrison, when he arrives at the age of twenty-one years, my gold watch. If he be living and if he be dead to Elizabeth Mahoner Noxubee City Missipi; The said Elizabeth to wear the watch until the said Nathl comes to the age. I also give to my grandson Nathl all the lands & the moneys & the negroes, the accounts, & the goods mixed of whatever kind that his father William A. Harrison has purloined & cheated me out of while he was in my confidence & trust. I further give to him all his father's kind letters which he wrote to me from 1831 to 1839 with all the bills, answers, depositions, &c., which are exhibits in the suit between us, this devise is made as far as my rights go & no farther. Here the sin of the father is visited on the child, for which I hope to be pardened in the world I must shortly go to be Judged of according to my deeds done in this."

In the clause of the will providing for the emancipation of his slaves the following language appears:

"I also do emancipate & set free to all intent & purposes all my slaves and their increase, that I loaned William A. Harrison (& for them I took his receipt but unfortunately lost it). If I recover them of him who resists my claim to them, & if I recover them they are to be under the same restrictions & reservations of those above mentioned in the care of Mathias Mahorner my Exor."

There was no evidence tending to show the result of the chancery suit in Columbus, Mississippi, named in the will.

No allotment of the Texas land scrip or lands named in the will is shown. It is shown by the evidence that there were nine sections of land located in Tyler and Hardin counties under similar scrip and ap-

propriated four years ago by plaintiffs, and eight sections in Hood, East-land, and other counties subsequently appropriated by Mahorner.

It is not shown what became of or who is entitled to the certificates or lands bequeathed or loaned to the Magees named as legatees in the will, except as shown by the will and the evidence hereinafter set out, which was the statement of a witness as follows:

"My first husband was Wm. Yeatman, one of the children of Mary Ann and John W. Yeatman. Am well acquainted with the history of the Yeatman family. I was not acquainted with the Magees named in the will. I have been told that they both went to Ohio and there died some seven years ago. I do not know whether or not they ever married or left issue. But I do know that the Yeatman heirs, plaintiffs in this suit, received their personal estate."

This is all the evidence that can have any bearing on the questions presented for decision, and for appellants it is contended: .

"1. That the legacy to Mahorner as to the Texas land scrip named in the will lapsed and belongs to plaintiffs as residuary legatees thereof. That said bequest was contingent, and the burden is on the defendant to show by affirmative proof in this case that the contingency happened.

"2. Plaintiffs also contend that they are entitled to recover the interest in the Texas lands bequeathed or loaned to the Magees under said N. H. Hooe's will.

"3. That the contingency expressed just preceding the words giving the Texas land scrip to Mathias Mahorner refers to the subsequent and not the preceding property bequeathed.

"4. That it is incumbent on defendant herein to show by affirmative proof that the allotment of the Texas lands named in the will was made, and that the particular section in controversy fell to the defendant's vendor, Mahorner.

"5. Plaintiffs further insist that in the absence of an allotment as contemplated by the will, each legatee is entitled to an undivided interest in every section of land proportionate to the number of sections bequeathed to him respectively."

The first and third propositions are primarily dependent on the inquiry whether the devise of four sections of land to Mahorner was absolute or only to become so in event the suits pending between the testator and Harrison were decided in favor of the former.

It would be very difficult from the will itself to ascertain the motive which may have prompted some of its provisions. It, however, recognizes the fact that there were suits pending between the testator and his son-in-law, William A. Harrison; and, as we would infer from the will, the parties concede that those suits were pending in a Chancery Court in the State of Mississippi.

It might not unreasonably be inferred from this that the suits related

to property which the testator assumed the right to dispose of subject to their result, which might be an adjudication that the property did or did not belong to him.

The testator did not intend to die intestate as to any lands or other property which he assumed the right to dispose of either absolutely or contingently; and it is evident that he did not devise the lands named in the sixth paragraph of his will, unless they passed to Mahorner to the extent of the testator's interest, for as to such lands there was no residuary devisee. This further tends to show that the testator recognized that title to some of the land devised in that paragraph would depend on the result of the suits referred to.

The case would be exceptional in which a Chancery Court sitting in our State would exercise jurisdiction through which might be affected the title to real estate situated in another State; and this lends some force to the inference that the suits referred to might in some event affect the right of the testator to property described, in connection with the words claimed to make the devises to Mahorner to some extent contingent.

The testator evidently desired to bestow upon his natural son, Mahorner, all the lands devised to him either absolutely or contingently, but was in doubt as to his title to some parts of the land, and for that reason made the devises subject to the result of litigation then pending.

He evidently was not influenced in the matter now under consideration by any desire to bestow anything on his son-in-law, Harrison, nor upon the son of his daughter who was then dead.

The fourth item of the will evidences an intention to exclude from his bounties the son of his daughter, except in so far as that conferred upon him the testator's watch, for he only proposed to give to him lands which under their description it was evident he did not own and had no power to devise, which, however, he may have once claimed.

That item is bitterly ironical, and another shows that the suits between the testator and his son-in-law embraced a controversy about negroes as well as lands.

It seems to us that the words "if I gain the suits against William A. Harrison depending in the Chancery Court at Columbus" relate to the lands or some of the lands named in the preceding part of the paragraph. The words may only relate to a part of the lands described in the part of that paragraph preceding them, and have been used, not for the purpose of making the devise contingent as to any interest the testator had in them, but to indicate that the devisee's title was contingent only on the ownership of the testator, a matter to be determined in the suits referred to.

This view is in harmony with the fact that the testator made no other disposition of the lands devised to Mahorner either absolutely or contin-

gently, nor did he name as to those lands any residuary devisee or devisees to whom they would go if the devise to him failed for any cause.

The words may have been used not for the purpose of making any part of the devise contingent in any sense, but, in connection with the words "being forty-one eights of land" immediately preceding them, for the purpose of giving the sum of eights of sections effect by devise if the suits terminated favorably to the testator.

It will be observed that in giving Mississippi lands to Mahorner the form of devise as to thirty eighths of sections is absolute unless made contingent by the words in question, while the remaining eleven eighths of sections requisite to make the forty-one eights are embraced in the following language: "*All my rights in section 34, & all my rights in section 33, all my rights in section 32, & all my rights in section 31, all lying,*" etc.

As to these the devise was only of such right as he had, and the inference is fair that he recognized that to be contingent on the result of the suits referred to, but in enumerating the extent of the devise of Mississippi lands declared it would amount to an effective devise of forty-one sections if the suits referred to were decided in his favor.

The lands other than those in Mississippi given to Mahorner consisted of four sections of land in Texas, and if the claim through which that was done be read with its necessary connection it will read, "I give forever to Mathias Mahorner * * * also four sections of my Texas land scrip, to be taken by lots," or it will read, "If I gain the suits against Wm. A. Harrison depending in the Chancery Court at Columbus, I also give forever to Mathias Mahorner four sections of my Texas land scrip."

The parties do not contend that the words land scrip did not mean land, and all the parts of the will show such to have been the sense in which the words were used.

The facts before referred to tend to show that the first reading is the correct one, but there are some other matters that tend to the same conclusion.

The testator speaks of his Texas lands in five paragraphs of his will as his lands or land scrip, and bequeathed to Mathias Mahorner $1100 of the funded debt of Texas, providing that "the interest of this funded debt is reserved for twenty-one years to meet the payment of the taxes on all the lands I purchased in Texas, but if this falls short of paying as I intend, then the said M. Mahorner must pay them from the portion of the estate I have given him; but if any of my legatees at any time take possession of their Texas land it will be by allotment, and each person as they receive it must pay the tax on it."

If Mahorner's right to the Texas lands devised to him had been intended to be contingent on the result of litigation pending in Mississippi when the will was made, the testator would not have been likely to make provision for payment of taxes on it for twenty-one years after his death, and to

make this a burden on a devisee in case the interest on the particular fund bequeathed to him proved insufficient for that purpose.

The will also recognizes the right of each devisee of Texas lands to take possession, in accordance with the terms of the will, of the lands given to him or her, and this would not probably have been done if the right of any one of them was intended to be contingent on any fact other than the testator's ownership.

Suits in chancery may continue for many years or may speedily be decided, and it is not likely that the testator expected that a suit pending when the will was made would not be ended in less than twenty-one years after his death; nor can it be believed that he intended to make the devise of lands in Texas to Mahorner contingent on the results of the suits in Mississippi.

If the right of Mahorner to the Texas lands devised to him, however, was made contingent on the result of the suits referred to in the will, appellants could not claim such lands as residuary devisees, for there is nothing in the will that makes them such devisees, though the will in a named event did make Mathias Mahorner and John Yeatman residuary legatees of such part of a named fund as might not be necessary to carry out the purposes of the will in relation to the slaves the testator attempted to emancipate, and did make "the living children of Mary Ann Yeatman now in Baltimore" devisees of the lands given to the Misses Magee in the event they both died without children.

The evidence offered is not sufficient to show that either of the Misses Magee is dead, nor to show any of the other facts necessary to be shown before any of appellants would become entitled to the lands devised to them with power to bestow it upon their children.

It is shown that the testator owned seventeen sections of land in Texas. Of this he gave to Mahorner four sections, to each of the Misses Magees two sections for life, with power to devise the fee to their children, two sections to John Yeatman, and the balance to Mary Ann Yeatman's children equally.

The plaintiffs are the children or heirs of children of Mary Ann Yeatman, one of them being the sole surviving child of John Yeatman, and the conceded fact is that they have appropriated nine sections of the Texas land.

These facts show that they have appropriated as many sections as they were entitled to under the will, and in the absence of some evidence showing that those were not as valuable, section for section, as the remaining eight, they are not entitled to recover any of the land in controversy, unless facts were found showing that the lands devised to the Misses Magee had fallen to them.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered December 12, 1890.